IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| COLSON TENNESSEE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-280-JHP |
| | ) | |
| AMERICAN CRANE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I.  Findings of Fact**

  **A.  The Chicago Project**

  1.  In February 2006, Colson Tennessee, Inc., began soliciting bids on a project to disassemble a bridge-crane, chiller, and other equipment that Colson had purchased in Chicago, Illinois, transport the equipment to Wagoner, Oklahoma, unload the equipment, and reinstall the bridge-crane and chiller in Colson's Wagoner facility (the Chicago Project). (Tr. Trans. at 25:2-25:23.)

  2.  The Chicago Project was part of a larger agreement with Target Corporation to build shopping carts. (Tr. Trans. at 33:17-34:13.)

  3.  On February 9, 2006, American Crane, Inc., a crane rental and rigging business owned by Larry Payton and located in Jonesboro, Arkansas, submitted a bid to Colson offering to perform the Chicago Project in exchange for $104,000. (Pl.'s Tr. Ex. 2; Tr. Trans. at 168:18-169:22.)

  4.  On March 3, 2006, Colson issued a purchase order accepting American Crane's bid to perform the Chicago Project in exchange for $104,000. (Pl.'s Tr. Ex. 5.)

5. In late March 2006, American Crane's subcontractors delivered the bridge-crane and other equipment to Colson's Wagoner facility. (Tr. Trans. at 38:6-39:19.)

6. In preparation for the bridge-crane's installation, Colson constructed footings in its Wagoner facility that were substantially the same as those upon which the bridge-crane had been installed in Chicago. (Tr. Trans. at 40:1-40:3.)

7. After inspecting the footings, Mackey & Sons, the subcontractor American Crane had hired to install the bridge-crane in Colson's facility, refused to install the bridge-crane, claiming that the footings were inadequate and demanding that Colson first construct new footings. (Tr. Trans. at 39:16-42:5; 289:17-290:7.)

8. In response, Colson hired Danny Hughes Concrete Specialists to construct a second set of footings for the bridge-crane to provide additional support. (Pl.'s Tr. Ex. 23, 39; Tr. Trans. at 42:6-52:18, 147:14-156:8.)

9. After either inspecting the footings themselves or being informed of their dimensions, Mackey & Sons again refused to install the bridge-crane in Colson's facility. (Tr. Trans. at 52:19-53:25, 303:6-306:13.)

10. Neither Mackey & Sons nor American Crane contacted Colson regarding the completion of the Chicago Project per the parties' agreement. (Tr. Trans. at 52:19-53:25, 56:16-57:14.)

11. Neither Mackey & Sons nor American Crane had an engineer inspect the footings to determine whether they were unsafe or inadequate, or presented Colson with any evidence that the second set of footings were unsafe or inadequate. (Tr. Trans. at 39:16-53:25, 56:16-57:14, 303:6-307:19.)

12. Following Mackey & Sons' second refusal to erect the bridge-crane,

Colson had a third-party, Machines International, Inc., inspect the footings for the bridge-crane. (Tr. Trans. at 54:1-55:18.)

13. On May 10, 2006, Machines International submitted a bid to Colson offering to install the bridge-crane in exchange for $62,000, which Colson accepted by issuing a purchase order on May 22, 2006. (Pl.'s Ex. 13; Tr. Trans. at 55:14-55:18, 60:6-67:19.)

14. Machines International installed the bridge-crane on the existing footings at Colson's Wagoner facility, performing only services that American Crane had agreed to perform, in exchange for $62,000. (Tr. Trans. at 60:16-67:19.)

15. Despite American Crane's failure to complete the installation of the bridge-crane, in response to a request by American Crane, Colson paid American Crane $68,500 for its partial performance of the Chicago Project. (Tr. Trans. at 57:15-60:5, 178:22-178:25.)

16. Since its installation by Machines International, the bridge-crane has passed a third-party safety inspection by Crane Pro Service and has operated without incident on the footings constructed by Danny Hughes Concrete Specialists. (Pl.'s Tr. Ex. 53; Tr. Trans. at 67:20-73:23.)

    **B.    The Durant Project**

1. On February 10, 2006, Colson first learned of several horizontal injection molding machines for sale by an auction company in Durant, Oklahoma. (Tr. Trans. at 73:24-75-13.)

2. After its employees inspected the machines on February 14, 2006, Colson decided to purchase the machines on or about February 17, 2006. (Tr. Trans. at 75:14-77:4.)

3. Subsequently, Colson solicited bids to dismantle and transport the machines and related equipment from Durant to Colson's facilities in Wagoner, Oklahoma, and Monette,

Arkansas, for reassembly (the Durant Project). (Pl.'s Tr. Ex. 7, 38; Tr. Trans. at 73:24-86:12.)

4. On February 22, 2006, American Crane submitted a bid to Colson offering to perform the Durant Project in exchange for $112,500. (Pl.'s Tr. Ex. 7.)

5. On March 14, 2006, Colson accepted via purchase order the competing bid of Machines International, which had offered to perform the Durant Project in exchange for $103,500. (Pl.'s Tr. Ex. 7, 38; Tr. Trans. at 73:24-86:12.)

6. No documentary evidence exists establishing that Colson either awarded the Durant Project to American Crane or agreed to do so. Furthermore, neither American Crane's bid on the Chicago Project nor Colson's purchase order accepting American Crane's bid indicate that American Crane's bid to perform the Chicago Project for $104,000, or the Chicago Project agreement itself, was in any way contingent upon Colson's promise to award the Durant Project to American Crane. (Pl.'s Tr. Ex. 2, 5, 7; Tr. Trans. at 174:6-174:17, 175:17-175:21, 203:25-206:2, 208:5-211:1; 210:14-211:1.)

7. American Crane identified no other projects that it performed for Colson without first receiving written confirmation of the agreement. Moreover, American Crane never contracted with Colson to perform any other project the size of the Durant Project without receiving a written confirmation. Instead, the course of conduct established between the parties indicates that Colson accepted and confirmed its agreements with American Crane in writing. (Pl.'s Tr. Ex. 2, 5; Tr. Trans. at 28:21-35:19, 170:10-174:5, 227:1-228:17, 228:23-233:18, 265:17-265:24.)

8. Colson's Monette facility has a policy to always accept and confirm a contract for a project like the Durant Project with a written purchase order. (Tr. Trans. at 32:21-34:1.)

9. American Crane did not perform any part of the Durant Project or expend any

funds in preparation for the Durant Project. (Tr. Trans. at 211:3-216:10.)

10. American Crane did not present any evidence establishing any damages resulting from its loss of the Durant Project. (Tr. Trans. at 252:11-258:20, 260:10265:13, 270:15270:24.)

## II. Conclusions of Law

### A. Jurisdiction, Venue, and Applicable Law

1. The Court has subject matter jurisdiction over this action. 28 U.S.C. §§ 1332, 1441.

2. The Court has personal jurisdiction over the parties, and venue is appropriate. (Agreed Pretrial Order at 4.)

3. Oklahoma substantive law, including Oklahoma contract law, governs all claims asserted in this action. (Agreed Pretrial Order at 4.)

### B. Colson's Claim for Breach of Contract

1. The elements of a claim for breach of contract are "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001).

2. Under Oklahoma law, the elements of a contract are "competent parties, consent, a legal object and consideration." *Intercon Mfg., Inc. v. Centrifugal Casting Mach. Co., Inc.*, 875 P.2d 1149, 1152 (Okla. Civ. App. 1993); *see* Okla. Stat. tit. 15, § 2.

3. The parties' consent must be free, mutual, and communicated to each other. Okla. Stat. tit. 15, § 51. Consent is neither real nor free when obtained through fraud. Okla. Stat. tit. 15, § 53. Actual fraud involved certain acts "committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract." Okla. Stat. tit. 15, § 58.

4. "The measure of damages for breach of contract is the amount that would place the aggrieved party in the position he would have occupied had the breach not occurred." *Sun Ridge Investors, Ltd. v. Parker*, 956 P.2d 876, 878 (Okla. 1998); *see* Okla. Stat. tit. 23, § 21 ("For the breach of an obligation arising from contract, the measure of damages...is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.").

5. "[W]hen a contract fails to specify the amount of time in which a party thereto must perform, contract law allows that party a reasonable time to so perform his obligations under the contract." *I.C. Gas Amcana, Inc., v. J.R. Hood*, 855 P.2d 597, 600 (Okla. 1992); *see also* Okla. Stat. tit. 15, § 173. "What constitutes a reasonable time is a question to be determined from consideration of all the facts and circumstances in the case." *I.C. Gas Amcana*, 855 P.2d at 600.

6. Colson and American Crane entered into a legally enforceable contract whereby American Crane agreed to perform the Chicago Project in exchange for $104,000.

7. American Crane materially breached this contract by failing, either directly or through its subcontractor, Mackey & Sons, to install the bridge-crane in Colson's Wagoner facility for more than two months following delivery of the bridge-crane to Colson's facility.

8. American Crane has failed to establish any affirmative defenses, including fraud, justifying its failure, in accordance with the terms of the contract, to install the bridge-crane in Colson's Wagoner facility within a reasonable time.

9. As a result of American Crane's breach, Colson sustained and is entitled to recover damages in the amount of $26,500, the difference between the amount Colson paid to complete the Chicago Project and the amount it would have paid had American Crane installed

the bridge-crane in accordance with the contract.

  **C. Colson's Claim for Attorney Fees**

  1. Under Oklahoma law, "attorney fees are not ordinarily recoverable in the absence of a statute or specific contractual authority." *Wieland v. Danner Auto Supply, Inc.*, 695 P.2d 1332, 1333 (Okla.1984)

  2. Nevertheless, "[i]n any civil action to recover for labor or services rendered...the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." Okla. Stat. tit. 12, § 936.

  3. "It is the underlying nature of the suit itself which determines the applicability of the labor and services provisions of section 936." *Burrows Const. Co. v. Indep. Sch. Dist. No. 2 of Stephens County*, 704 P.2d 1136, 1138 (Okla. 1985). "The question is whether the damages arose directly from the rendition of labor or services, such as a failure to pay for those services, or from an aspect collaterally relating to labor and services, such as loss of profits on a contract involving the rendition of labor and services." *Id*.

  4. In this case, neither Colson nor American Crane seeks to recover "for labor or services rendered." Instead, Colson instituted this action to recover damages arising from American Crane's *failure* to render such services and the corresponding increase in costs relating to the installation of the bridge-crane and the completion of the Chicago Project by a third-party. Likewise, American Crane sought to recover for lost profits and expenses incurred as a result of Colson's decision to hire a third-party to complete the Chicago Project and to award the Durant Project to another company. Accordingly, Colson, as the prevailing party in this action, is not entitled to recover its attorney fees incurred in connection therewith pursuant to section 936.

  **D. American Crane's Counterclaims for Breach of Contract and Tortious**

**Breach of Contract**

1. "The party who alleges a contract, either as a cause of action or a defense, has the burden of proving it, if the existence of the contract is put in issue; and he has the burden of proving every fact essential to the cause of action or defense." *National Surety Co. v. Board of Ed. of City of Hugo*, 129 P. 25, 26 (Okla. 1912).

2. American Crane has alleged the existence of an oral contract between itself and Colson to perform both the Durant and Chicago Projects. Because Colson placed the existence of this alleged oral contract at issue, American Crane had the burden to prove by a preponderance of the evidence the existence of the alleged oral contract. Nevertheless, American Crane has failed to prove by a preponderance of the evidence that said contract exists; accordingly, American Crane cannot recover for breach of contract.

3. Similarly, because American Crane's tortious breach of contract claim is premised on the existence of this same oral contract, American Crane has also failed to establish a valid claim for tortious breach of contract.

4. Moreover, "to recover upon a contract, the contractor complaining of his contractee's non-performance must first establish his own performance or a valid excuse for his failure to perform." *Miller v. Young,* 172 P.2d 994, 995 (Okla. 1946). To the extent that American Crane asserts and independent claim based upon Colson's alleged breach or tortious breach of the underlying Chicago Project contract, American Crane has failed to establish its own performance of the Chicago Project or to offer a valid excuse for its failure to perform its obligations under the contract within a reasonable time.

**E.    American Crane's Counterclaim for Common Law Fraud and Deceit**

1. "The elements of actionable fraud are: (1) That defendant made a material

representation; (2) that it was false; (3) that he made it when he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *State ex rel. Southwestern Bell Tel. Co. v. Brown*, 519 P.2d 491, 495 (Okla. 1974). "Fraud is never presumed and it must be proved by clear and convincing evidence." *Rogers v. Meiser*, 68 P.3d 967, 977 (Okla. 2003).

2. American Crane has failed to prove by clear and convincing evidence that Colson, through its employees, made any false representations or that American Crane relied upon such representations to its detriment in connection with the Chicago and Durant Projects.[1] In particular, American Crane failed to prove that any Colson employees promised the Durant Project to American Crane in exchange for limiting its bid with regard to the Chicago Project.

F. **American Crane's Counterclaim for Statutory Deceit**

1. "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Okla. Stat. tit. 76, § 2. Deceit includes: (1) "[t]he suggestion, as a fact, of that which is not true by one who does not believe it to be true," (2) "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true," (3) "[t]he suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact," or (4) "[a] promise, made without any intention of performing." Okla. Stat. tit. 76, § 3.

2. To the extent that American Crane's claim for statutory deceit is distinct from its

---

[1] For the same reason, to the extent American Crane attempts to assert a distinct claim for "detrimental reliance" (Agreed Pretrial Order at 4), that counterclaim also fails.

claim for common law fraud or deceit, American Crane has still failed to prove that Colson made any false assertions, concealed any facts it was bound to disclose, or made any promises it did not intend to perform with regard to either the Chicago or Durant Projects.

IT IS SO ORDERED this 14th day of September, 2007.

James H. Payne
United States District Judge
Eastern District of Oklahoma